```
                    UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NANCY J. NAUGHTON ALLEN,          :   CIVIL NO. 1:08-CV-0092
                                  :
          Plaintiff               :   (Judge Caldwell)
                                  :
     v.                           :   (Magistrate Judge Smyser)
                                  :
MICHAEL J. ASTRUE,                :
Commissioner of                   :
Social Security,                  :
                                  :
          Defendant               :
```

**REPORT AND RECOMMENDATION**

The plaintiff has brought this civil action under the authority of 42 U.S.C. § 405(g) to obtain judicial review of the decision of the Commissioner of Social Security denying her claim for Social Security supplemental security income (SSI).

On March 3, 2006, the plaintiff, Nancy J. Naughton Allen, applied for supplemental security income. She claimed that she became disabled on June 1, 2004 due to Crohn's disease, diabetes, arthritis, and "post-childbirth complications." (Tr. 16, 67, 313).[1]  Her claim was initially denied. (Tr. 16, 22-26). The plaintiff filed a request for a hearing, and a hearing was held before an administrative law judge (ALJ) on December 14, 2006. (Tr. 21, 293-334).

---

[1] The plaintiff initially alleged a disability onset date of September 23, 1999. (Tr. 10, 63, 301). At the ALJ hearing, the plaintiff amended her disability onset date to June 1, 2004, the date she was in a motor vehicle accident. (Tr. 313).

At the December 14, 2006 hearing, the plaintiff, represented by counsel, and a vocational witness testified. (Tr. 293-334). The plaintiff testified that she was born on May 24, 1958 and was forty-eight years old at the time of the ALJ hearing. (Tr. 300). The plaintiff is a single mother of two children. (Tr. 305). She completed high school, attended (but did not complete) college, and obtained a degree in equine science. (Tr. 301). The plaintiff has past work relevant experience as a horse breeder and trainer. (Tr. 301).

The plaintiff testified that she has trouble using her left arm and that she suffers from diabetes mellitus, Crohn's disease, abscesses, arthritis, back impairments, psychological impairments and difficulty with her memory. (Tr. 303-08, 322). The plaintiff takes medication to treat her symptoms. (Tr. 304-05). She treats with a therapist a couple of times a year for her psychological impairments. (Tr. 308). The plaintiff also treated at a methadone clinic due to opioid addiction. (Tr. 321-22).

During the day, the plaintiff helps her children get ready for school, cleans the house, does laundry, cooks, reads and watches television. (Tr. 309-10, 323-24). Approximately five days a month the plaintiff needs to lie down during the day due to her pain. (Tr. 310-11). The plaintiff attends church twice a week. She has no friends and does not socialize. (Tr. 312, 324).

2

The vocational witness identified the plaintiff's past work as a horse breeder and trainer as skilled work at the heavy duty exertional level, as performed by the plaintiff. (Tr. 326). The vocational witness also stated that the plaintiff's work as a horse breeder and trainer was not done at the substantial gainful activity level. (Tr. 326).

The ALJ asked the vocational witness to hypothetically consider an individual with the same age, education and background as the claimant and with the ability to perform work at the light and sedentary exertional levels, with restrictions in the use of her left arm, who would not need to work around heights or hazardous machinery, who would need to use steps only occasionally, whose job would require low focus and low concentration, whose job would require no bending at the waist, who would have restrooms available close to the work site, whose workplace would have a controlled temperature, who is able to drive and whose job would have some body weight restrictions. (Tr. 328-29). The vocational witness testified that such an individual would be able to perform work as a mail clerk, as a conveyor line bakery worker, as a food and beverage order clerk or as a call-out operator. (Tr. 329-30).

The ALJ then asked the vocational witness to consider the same hypothetical person if she had the added restrictions presented by the plaintiff in her testimony. (Tr. 331). The vocational witness stated that such an individual would not be

3

able to sustain work for an eight-hour day if she needed to lie down during the day for about two hours at a time. (Tr. 331).

Regarding the first hypothetical, the vocational witness stated that the individual would not be able to perform the identified jobs if she were unable to stay focused on the task at hand. (Tr. 332-33).

On December 29, 2006, the ALJ issued a decision denying the application of the plaintiff for benefits. (Tr. 7-15). The Appeals Council denied the plaintiff's request for review (Tr. 3-6), making the ALJ's decision the final decision of the Commissioner.

The plaintiff filed her complaint with this court on January 14, 2008. The defendant filed an answer to the complaint and a copy of the administrative record on March 21, 2008. Pursuant to Local Rules 83.40.4 and 83.40.5 and the court's Order of January 15, 2008, the plaintiff filed her brief on May 5, 2008 and the defendant filed his brief on June 6, 2008. No reply brief has been filed.

If the Commissioner's decision is supported by substantial evidence it must be affirmed. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.

4

1995). Substantial evidence is more than a mere scintilla of evidence but less than a preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

To facilitate review of the Commissioner's decision under the substantial evidence standard, the Commissioner's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920.

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that she is unable to engage in her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason*, 994 F.2d at 1064.

In this case, the ALJ determined that the plaintiff has not engaged in substantial gainful activity since the alleged onset date, that she has severe impairments, that her impairments alone or in combination do not meet or equal the requirements of any listed impairment, and that she is unable to perform any of her past relevant work. (Tr. 12-14). The ALJ further determined that the plaintiff has the residual functional capacity to perform a range of light duty work. (Tr. 12-14).

On the basis of these findings, the ALJ found the plaintiff not to be disabled.

The plaintiff argues that the ALJ erred in failing to give appropriate weight to the opinion of her treating physician, David A. Wait, M.D., in failing to state what weight was accorded to Dr. Wait's Medical Source Statement, in failing to find that her respiratory impairment, depression and anxiety, bipolar disorder and arthritis are severe impairments, in failing to state what weight was accorded to her chiropractic records, and in finding that she was not fully credible.

The plaintiff first argues that inadequate weight was assigned to medical opinions supporting an inference of disability. The plaintiff states that Dr. Wait's opinion that she was totally disabled is entitled to controlling weight as a treating source opinion.

An ALJ must accord great weight to a treating physician's report. Treating physicians' opinions are entitled to great weight especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir. 1994); *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991); *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir. 1989); *Frankenfield*

*v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988); *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986).  Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining non-examining physician, the ALJ must of course choose which opinion to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason*, 994 F.2d at 1066).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled.  *See Adorno*, 40 F.3d at 48.  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion.  *Plummer*, 186 F.3d at 429; *Frankenfield*, 861 F.2d at 408; *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983).

     Dr. Wait stated an opinion on three occasions that the plaintiff is disabled.  On April 18, 2006, Dr. Wait completed a Pennsylvania Department of Public Welfare Employability Assessment Form and stated that the plaintiff is permanently disabled due to arthritis, low back pain and diabetes.  (Tr. 184).  The ALJ found that this opinion overstated the plaintiff's limitations.  (Tr. 13).

     On October 17, 2006, Dr. Wait wrote a "To Whom It May Concern" letter stating that the plaintiff was incapable of

8

returning to work for at least six months. (Tr. 227). Dr. Wait noted that he had been treating the plaintiff for several years and that she suffers from multiple abscesses requiring surgery, uncontrolled diabetes, severe allergies, hypersensitivity pneumonitis, asthma and uncontrolled bipolar disorder. (Tr. 227).

On December 15, 2006, Dr. Wait completed a Medical Source Statement. (Tr. 289-92). Dr. Wait found that the plaintiff can occasionally lift and carry ten pounds, can frequently lift and carry less than ten pounds, can stand and/or walk for less than two hours in an eight-hour workday, is limited in pushing and pulling with the upper and lower extremities, and has postural, manipulative and environmental limitations. (Tr. 290-92). The plaintiff asserts that such limitations amount to a finding of disability pursuant to Social Security Ruling 96-8p. (Doc. 9 at 9).

The ALJ stated that Dr. Wait's opinions are not supported by the examination findings or the progress notes and that they are internally inconsistent. (Tr. 14). The ALJ stated that the progress notes reveal that the plaintiff was in no distress, that she was able to heel and toe walk, that she had a normal gait, and that she had been advised to perform light work. (Tr. 14).

The ALJ discussed the objective findings of record. He noted that a January 2005 MRI of the cervical spine revealed

degenerative disc disease with mild central canal stenosis and only mild to moderate left foraminal narrowing. (Tr. 13, 135). An EMG/nerve conduction study revealed bilateral carpal tunnel syndrome, but no evidence of cervical radiculopathy. (Tr. 13, 139). The ALJ found "moderate deficits" from his view of the objective findings. The ALJ does not demonstrate how Dr. Wait's opinion is based on limited clinical findings. *See Plummer,* 186 F.3d at 429 ("The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects."). *See also Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984) (The ALJ must explicate the analysis upon which he bases his ultimate decision, especially where he is rejecting the testimony of the claimant's treating physician or allegations of intractable pain) (citations omitted).

The ALJ accorded significant weight to the opinion of Matthew Bashare, a state agency examiner. (Tr. 13-14, 185-91). On May 25, 2006, Mr. Bashare concluded that the plaintiff is capable of performing light duty work. (Tr. 185). The ALJ found that this opinion was consistent with the "fairly benign" radiological findings and the limited treatment history. (Tr. 13-14). However, the ALJ fails to explain beyond this very general statement how the opinion is consistent with the record, or how the ALJ construes the record to support a view of the plaintiff as able to perform light work. A statement that an ability to perform light work is ". . . consistent with the fairly benign radiological findings as well as the limited treatment history" may be manifestly meaningful from the ALJ's

10

perspective, but from a review perspective it does not explain the finding.  Additionally, Mr. Bashare is not a medical consultant, he never examined the plaintiff and he based his opinion upon a review of the medical evidence.  Therefore, his opinion has less weight than it would have if he were a medical expert and had examined or treated the plaintiff.  *See Wier v. Heckler*, 734 F.2d 955, 963 (3d Cir. 1984) (The opinions of doctors who never examined the claimant had "less probative force, as a general matter, than they would if they had treated or examined" the claimant) (citing *Cotter*, 642 F.2d at 704). The ALJ does not undertake to demonstrate that Mr. Bashare's one-time assessment is based upon more reliable clinical findings or more correct medical analysis than the opinion of Dr. Wait, the treating physician.

The ALJ failed to afford adequate weight to the opinion of Dr. Wait, and was not presented with contrary medical evidence upon which to base a rejection of Dr. Wait's reports and opinions.

The plaintiff's second contention of error is that the ALJ erred in finding that her respiratory impairment, depression, anxiety, bipolar disorder and arthritis are not severe impairments.  At step two of the sequential evaluation process the ALJ determined that the plaintiff's carpal tunnel syndrome, degenerative disc disease of the cervical spine, diabetes, obesity and abscesses are severe, in combination. (Tr. 12).

11

"The burden placed on an applicant at step two is not an exacting one." *McCrea v. Commissioner of Soc. Sec.,* 370 F.3d 357, 360 (3d Cir. 2004). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Commissioner of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

The Commissioner's regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 28 C.F.R. § 404.1521(a). The regulations define "basic work activities" to mean "the abilities and aptitudes necessary to do most jobs." 28 C.F.R. § 404.1521(b). Examples of "basic work activities" include: "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." *Id.* "Although the regulatory language speaks in terms of "severity," the Commissioner has clarified that an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *McCrea, supra,* 370 F.3d at 360 (quoting SSR 85-28). "If the evidence presented by the claimant presents more than a "slight

12

abnormality," the step-two requirement of "severe" is met, and the sequential evaluation process should continue." *Newell, supra,* 347 F.3d at 546. "Any doubt as to whether this showing has been made is to be resolved in favor of the applicant." *McCrea, supra,* 370 F.3d at 360.

"The Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." *McCrea, supra,* 370 F.3d at 360-61. However, within the substantial evidence framework, due to the limited function of the step two analysis, "the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." *Id.* at 360.

Regarding the plaintiff's depression, the ALJ noted that the plaintiff had reported feelings of depression and that an October 2006 report had revealed that the plaintiff was treated for bipolar disorder. (Tr. 12). The ALJ then determined that the plaintiff's bipolar disorder is not severe because it does not result in more than a minimal degree of limitation in her ability to perform basic work activities. (Tr. 12). The ALJ noted that Dr. Wait's March 2006 examination findings indicate that the plaintiff was pleasant, cooperative, well-oriented, that she had denied suicidal ideation or psychosis, and that she appeared to get along well with others. (Tr. 12, 237). However, in August and September 2006, Dr. Wait noted that the plaintiff has anxiety, depression, disturbances

13

of emotion, disturbances of thinking, mania, psychosis or suicidal tendencies. (Tr. 247, 249, 251). The ALJ failed to address these findings of Dr. Wait. One could reasonably find such findings to signify a severe impairment, a finding not necessarily undermined by the March, 2006 observations.

On June 7, 2006, Soraya Amanullah, Ph.D., completed a Psychiatric Review Technique Form evaluating for anxiety-related disorders and substance addiction disorders. This Ph.D. reviewer determined that the plaintiff's mental impairments were not severe. (Tr. 192-204). The ALJ did not indicate whether he considered this Psychiatric Review Form.

Regarding the plaintiff's respiratory impairment and arthritis, the ALJ stated that the plaintiff failed to meet Listings 1.00 (Musculoskeletal System), 2.00 (Special Senses and Speech), 3.00 (Respiratory System), 4.00 (Cardiovascular System), 9.00 (Endocrine System), 11.00 (Neurological), and 14.00 (Immune System). (Tr. 12). However, the ALJ did not make any step two findings as to whether these are severe impairments, although no reason is apparent for an exemption from the step two analysis for these impairments.

On Dr. Wait's April 2006 Employability Assessment Form, he determined that the plaintiff is permanently disabled due to severe arthritis, low back pain, type II diabetes mellitus and neuropathic complications. (Tr. 184). Also, in Dr. Wait's October 2006 letter, he stated that the plaintiff

14

suffers from abscesses, diabetes, allergies, hypersensitivity pneumonitis, asthma and uncontrolled bipolar disorder. (Tr. 227). The ALJ rejected the opinion of Dr. Wait, the plaintiff's treating physician, as inconsistent with the evidence of record. However, the ALJ failed to explain how the opinion of Dr. Wait is not supported by the evidence of record. Additionally, objective findings revealed that the plaintiff suffers from bilateral carpal tunnel syndrome. (Tr. 13, 139).

The plaintiff has set forth evidence to establish that her respiratory impairment, depression, anxiety, bipolar disorder and arthritis significantly limit her ability to do basic work activities. *See* 28 C.F.R. § 404.1521(a).

The plaintiff next argues that the ALJ erred by failing to state what weight was accorded to her chiropractic records. The plaintiff treated with chiropractor Dr. Ernest J. Davis in 2005 and 2006. (Tr. 211-25). The opinion of a chiropractor is not an acceptable medical source. Acceptable medical sources include only licensed physicians, licensed or certified psychologists (including school psychologists), licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *See* 20 C.F.R. §§ 404.1513, 416.913. The opinion of a chiropractor is considered an "other source" and may be used to demonstrate the severity of an impairment and how it affects the plaintiff's ability to work. 20 C.F.R. § 416.913(d).

15

The ALJ failed to address the opinion of Dr. Davis. Dr. Davis noted that the plaintiff complained of back and shoulder pain, she suffered from limited range of motion, and diagnostic tests revealed cervical spondylosis. (Tr. 211-25). The ALJ should have considered Dr. Davis' opinion in determining whether the plaintiff's back impairment affected her ability to perform basic work. Although Dr. Davis' opinion is not entitled to controlling weight, the plaintiff is entitled to have it considered in determining the effect of the plaintiff's back impairment on the plaintiff's ability to perform basic work activities.

The plaintiff's last argument is that the ALJ erred in finding that she was not entirely credible.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *see also Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.")." *Frazier v. Apfel*, 2000 WL 288246 (E.D. Pa. 2000).

The ALJ found that the plaintiff's medically determinable impairments could reasonably be expected to

16

produce the alleged symptoms, but not to the extent of the intensity, persistence and limiting effects alleged by the plaintiff.  (Tr. 13).  The ALJ found that the plaintiff's description of her symptoms was "not entirely credible." *Id.* This generalized and unexplained statement of a negative view of the plaintiff's credibility is subject to less deference than would be an actual evaluation of the credibility of the testimonial assertions of the plaintiff.  A reviewer of social security disability adjudications sees this same expression of a negative evaluation of the claimant's credibility in virtually every reviewed decision.  The ALJ's adverse credibility finding refers to testimony given by the plaintiff about her symptoms and the difficulties that she has, then without any individualized consideration of any particular symptom(s), states that the ". . . claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Id*.  Yet, the putatively exaggerated or non-credible statements are not cited or quoted.  The ALJ does not point to specific statements of the plaintiff that are not credible.

      The ALJ stated that although the plaintiff alleges chronic low back and neck pain, and although the objective data supports the existence of abnormalities, the clinical findings, treatment history and activities of daily living do not support the plaintiff's complaints of debilitating pain.  (Tr. 13-14). While the ALJ acknowledged medical support for the plaintiff's symptoms and found that the symptoms could be caused by the

conditions supported by the objective medical evidence, the ALJ used his own medical expertise to say that there is not medical support for the degree of the symptoms.  An ALJ may not decide a case based on his own medical opinion.  *Plummer*, *supra*.  "[W]hile there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984).

However, the ALJ further noted that the plaintiff was advised to perform light exercise, that she denied abdominal pain, denied chest pain or pressure, that she was well nourished, well-developed and in no acute distress, that she had a normal gait, that she had no memory loss, no hearing loss, no paresthesia, spasms or spasticity, that she had no speech difficulties, and that she had no disturbances of thinking, psychosis or mania.  (Tr. 13, 231-32, 237).

The ALJ accepted the plaintiff's testimony that her impairments cause some pain and limitation, but found that her pain and limitations are less than alleged by the plaintiff.  (Tr. 13).  The ALJ's reasoning is faulty.  No satisfactory basis for rejecting the plaintiff's credibility based upon the objective medical evidence or some other basis is explained by the ALJ.

It is recommended that the appeal of the plaintiff be granted and that the case be remanded for further proceedings consistent with this report.

                                        */s/ J. Andrew Smyser*
                                        J. Andrew Smyser
                                        Magistrate Judge

Dated:  July 22, 2008.